Smith, P. J.
The action is brought to recover the amount of a promissory note made by the defendant to the plaintiff, 18th of May, 1882, for fifty dollars. The defendant alleges that the note was given for money advanced by the plaintiff upon an agreement by which the defendant contracted to make for the plaintiff crayon portraits of himself and wife at the price of sixty dollars.
It appears that the portraits were to be made from photographs deliver to the defendant for that purpose, from which he was to advance them as far as practicable, and was to finish them from observations from fife. The portraits were to be in all respects, to the plaintiff, satisfactory likenesses of himself and wife, and in case they were not, the plaintiff was to be under no obligations to accept and pay for them, and in that case the money advanced on the note was to be repaid to him.
In December following, the defendant brought the portraits to Corning, where the plaintiff lived, and left them at a hotel there, and so notified the plaintiff. The plaintiff on seeing them was not satisfied with them, and in a few days wrote, the defendant that they were not such as he had -contracted for, and that he declined to receive them, and requested immediate payment of the note. The defendant received the letter, but did not answer it, and nothing fur *156 ther occured about the matter, until this suit was begun in September, 1883. The portraits were not completed when left at Corning, nor were they then such as the contract called for.
At the close of the defendant’s testimony, and again at the close of the entire evidence, the plaintiffs counsel asked the court to direct a verdict in favor of the plaintiff for the amount of the note. The requests were declined and the plaintiff excepted.
The court submitted it to the jury to say whether the plaintiff refused to permit the defendant to proceed to the completion of the pictures, assuming that they were not completed; and he instructed them in substance, that if the plaintiff did so refuse, he could not avail himself of the defendant’s non-performance of the contract, provided the pictures were then such as that he would have been required to accept them after they were provided. And he further instructed them, in substance, that the question of refusal depended upon the constructions of the plaintiff’s letter, in view of the circumstances disclosed by the evidence.
The plaintiff’s counsel excepted to the instruction in the charge that the jury might say that the defendant had made out a right to claim damages on the ground of a breach of contract caused by the plaintiff.
Upon a careful examination of the case, we are of the opimon that the exceptions above-stated were well taken, for the reason that there is no evidence that the defendant requested or proposed to do anything more to the pictures after he left them at Corning, or that the plaintiff refused to permit him to do anything more to them, but that the transaction was simply an offer on the part of the defendant to deliver the pictures as they were then, and a refusal on the part of theplaintiff to accept them.
The defendant testified: “I saw the plaintiff at the depot ■ from the train, and stepped out and spoke to him, and told him I had left the pictures at the Dickinson Hotel, and he said he would look at them. He inquired where they were and said he would not accept them unless they were satisfactory. I assured him that I meant they should be satisfactory.” The train moved out and the defendant returned home. On cross-examination he stated, “I did not take any pains to find Mr. Moore, and have an interview with him. I simply left the pictures, and went off. I never spoke to Mr. Moore after that until I came here to try this law suit.” It is true the witness stated that he expected to complete the pictures by “finishing them up from life,” but he did not say that he disclosed his expectation to the plaintiff or in any way intimated to him that he intended to do anything more to them.
*157 The plaintiff’s version of the occurrence is as follows : ‘ ‘When he came up on the Monitor I was at the depot. He got off the train and said to me, ‘ I have got your pictures here.’ I said you are pretty late about it. He said he had first class pictures and said, ‘ I am going to Painted Post to deliver some other pictures, and will be down in the morning and deliver yours.’ I said all right.” The plaintiff saw nothing more of the defendant, but the next day he was told by some one connected with the Dickinson House that there was a package there for him, which proved to be the pictures, and after looking at them he wrote the letter.
The plaintiff also testified : “ He said he would see me in the morning and deliver the pictures; that is what he said; he did not say anything about finishing them up; I understood him they were finished.” * * * “He never offered to come and finish up the pictures from fife; I was ready to receive them'when he finished them according to his contract.” The defendant was recalled in his own behalf after that testimony was given, but he contradicted no portion of it, except the statement that he told plaintiff that he would deliver the pictures. What he said, as he testified, was that he would show him the pictures in the morning at the hotel.
It appeared from the testimony that the object of the stipulation in respect to finishing the pictures from life was to enable the artist to perfect his work, if he thought it necessary. And. for that purpose the plaintiff and his wife were not to visit the defendant at his studio in Ontario county, but the sitting was to be at their residence, and he was to notify them of his readiness to attend to them. If he chose to waive the sitting and tender the pictures made from the photographs, as finished, it was competent for him to do so, subject, of course, to the right of the plaintiff to refuse to accept them if they did not comply with the contract. It follows that if the defendant wished a sitting, it was incumbent on him to notify the plaintiff to that effect, in terms reasonably certain and not liable to be mistaken or misunderstood. Clearly, that he did not do. There was nothing in what he did or said, to give the plaintiff to understand that he intended or wished to finish the pictures from life. What he did and said was nothing more in effect than if he had sent the pictures to the plaintiff by express, with a note, saying: “Here are your portraits.”
In these circumstances, it seems to us a misinterpretation of the plaintiff’s letter to construe it as a refusal to permit the defendant to finish the pictures from life. He was required to notify the defendant promptly that he declined to receive the portraits, at the risk of being held to *158 have accepted them, if he remained silent; and we regard his letter as having that effect and nothing more.
But if there is any question upon the evidence in regard to the effect of the transactions at Corning, in December, 1882, including the letter, it appears to be set at rest by the averments in the pleadings, that on the occasion referred to, “he delivered, the portraits to the plaintiff and he refused to accept the same.” Also, that said portraits “were made in a good and artistic manner and were in every respect made, finished and delivered, according to the terms of said agreement.” It is true that in the same connection the defendant also alleged that the plaintiff refused to allow the defendant “tomake such corrections as might be found necessary from studying the subjects from life;” and he also avers his readiness and willingness to make any necessary correction, etc., but has been prevented by the neglect and refusal of plaintiff. But those averments do not neutralize or modify the allegations first above referred to. They do not amount to a withdrawal of the issue tendered, of full performance, delivery and refusal to accept. The plaintiff met that issue in his reply, by admitting that on the occasion referred to, the defendant offered to deliver the portraits to the plaintiff, and that the plaintiff refused to accept the same; but he denied that he refused to allow the defendant to make corrections, etc. The defendant having alleged in his answer, in express and positive terms, that the portraits were “finished and delivered ” according to the terms of the agreement, he was concluded thereby, and as it was undisputed at the trial, that the portraits when delivered at Corning were not such as the agreement called for; the defense failed and the plaintiff was entitled to judgment.
The court also charged the jury, in substance, that if the agreement was that the portraits should be satisfactory to the plaintiff, the meaning of that provision of the contract was not that the caprice of the plaintiff should control, but that the painting must be a good one and come up to the standard required, and if it does, that he cannot say by caprice that he will not take it. Otherwise there would be no force in contracts. And the charge continued in the following language: “When a party will say, 11 will not accept it if it is not satisfactory,’ it means that the picture must be such that it will come within the contract, and be such as would be required to be satisfactory; and it would be if it was made as the contract fairly required.”
Without questioning the accuracy of this charge as applied to certain classes of contracts, we think it is not applicable to the case in hand, so far as it conveys the idea that if the jury think the party ought to have been satisfied *159 he is bound although not satisfied. We understand that when a person contracts to perform work to the satisfaction of the other party to the contract, and the subject involved is a matter of taste, like the painting of a portrait, the rule is that the person for whom the work is to be done is the sole judge, and if he refuses to accept the work on the ground that it is not satisfactory, his decision cannot be questioned. One of the terms of the contract being that the work shall be satisfactory to him, if it is not so, the contract is not performed and he is not liable. He did not agree to accept what might be satisfactory to others unless it was satisfactory to him, and the contract does not give to the opposite party, or to a jury, nor to any other person, the right to decide whether he is or ought to be satisfied. These views are sustained by the case of Zaleski v. Clark (44 Conn., 218), where the work to be done was the making of a plaster bust of the deceased husband of the defendant. In Gray v. The Central R. R. Co. of New Jersey (11 Hun, 70) they were applied in the case of a contract for the purchase of a steamboat, “ provided, upon trial, they (the purchasers) are satisfied with the soundness of her machinery, boilers, etc.” See, also, the cases there cited in the opinion of Davis, P. J. (p. 73).
We question, however, whether this misdirection, if it be one, is ground for setting aside the verdict, inasmuch as it does not appear to have been excepted to at the trial, or to have been made a ground of the motion for a new trial before the trial judge. We have commented upon it in view of the possibility that the case will be tried again.
Upon the ground first stated herein, the order should be reversed and a new trial granted, costs to abide event.
Barker and Haight, JJ., concur.